## IN RE ESTATE OF MARCELLUS A. BALL, DECEASED.

## JESSIE A. BALL v. GREAT NORTHERN RAILWAY COMPANY.[1]

February 14, 1919.

No. 21,061.

**Railway — contributory negligence.**

Plaintiff's intestate was killed, while crossing a public street, through the negligence of defendant's employees. The question of contributory negligence on the part of deceased was fully and properly submitted to the jury.

Action in the district court for Hennepin county by the special administratrix of the estate of Marcellus A. Ball, deceased, to recover $7,500 for the death of her intestate. The answer alleged decedent was guilty of contributory negligence. The case was tried before Fish, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $5,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Cobb, Wheelwright & Dille* and *George Hoke,* for appellant.

*M. H. Boutelle* and *A. M. Higgins,* for respondent.

QUINN, J.

This is an action to recover for the death of plaintiff's intestate which occurred on April 12, 1917, as the result of the alleged negligence of defendant's employees in switching cars at or near the intersection of Main street and Third avenue southeast in the city of Minneapolis. There were the usual issues of negligence and contributory negligence tried and submitted to a jury, and a verdict was returned for the plaintiff for

[1] Reported in 170 N. W. 847.

$5,000. From an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial, the defendant appealed.

Main street extends practically east and west, Third avenue southeast crossing it at right angles. Both are public streets and paved at the point in question. At the northeast corner of this intersection is the Pillsbury A mill, and at the northwest corner is located the Phoenix mill, both facing and abutting upon Main street. Upon and along the south side of Main street appellant has and operates a main railway track. Extending from this track and connected therewith by switches near the eastern side of Third avenue southeast are two industrial tracks crossing Main street diagonally toward the platform in front of the Phoenix mill. These tracks are 15 feet apart from center to center at the point opposite the Phoenix mill, the one farther south being in about the center of Main street and the northern one near the platform at the Phoenix mill.

At the time of the accident there were two box cars standing about four feet apart on the south Phoenix track, the opening between them being approximately on a line with the west side of Third avenue southeast, or where pedestrians would be most likely to travel in crossing south from the Phoenix corner. Deceased was a laborer in the Pillsbury A mill. At the close of his day's work he started home, walked west across Third avenue southeast to the Phoenix corner, where he turned south to cross Main street. As he approached the south Phoenix track he undertook to pass between the two cars, when the easterly one was suddenly driven west, catching decedent between the couplings and causing his almost instant death.

The miller testified that he was standing on the platform at the door of the Phoenix mill and witnessed the accident; that he first saw decedent as he passed by the Phoenix corner and started to cross Main street; that there was a box car about 60 feet long standing upon the north Phoenix track immediately to the east of where decedent crossed it; that he saw decedent as he stepped between the two box cars standing on the south Phoenix track; that the easterly of the two cars was suddenly driven west, and decedent was caught between the couplings; that there

was no flagman at the crossing, no brakeman on the car, and that neither the bell nor whistle was sounded.

There is but little substantial difference in the stories as to how the accident occurred. The switching crew say that shortly before the accident the box car that caused the same had been "kicked" in on the south Phoenix track to the place of the accident; that at the time of the accident the engine with four cars undertook to couple onto the fatal car; that the coupling failed to make, and that the impact drove the car west against the second car, catching decedent and causing his death.

There was a sharp conflict in the testimony as to whether there was a box car standing on the north Phoenix track so as to obstruct decedent's view of the switching as he approached the place of the accident. It is appellant's contention that the testimony is so overwhelmingly to the effect that no car was standing upon that track, and that consequently decedent, at all times while approaching the opening where the accident occurred, had a clear and unobstructed view in the direction of the switching, that therefore it conclusively appears that he was guilty of contributory negligence which led to his death. Appellant further contends that, conceding the presence of the car at that point, still it was the duty of decedent to stop, look and listen as he approached the opening between the cars, and that the court should have so instructed the jury. Whether there was a car standing upon the north track was clearly a question for the jury under the evidence. The car that caused the injury was standing loose upon the track, the brakes were not set, the engine and four cars evidently were drifting noiselessly along, and the decedent was struck as by a serpent without a rattle.

We think the instructions upon the question of contributory negligence were sufficiently full and specific and that the verdict should not be disturbed.

Affirmed.